UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CLIFFORD JOHN FANTEL JR.              :
        Plaintiff,                  :
                               :
        v.                         :          C.A. No. 24-120WES
                               :
STATE OF RHODE ISLAND and             :
PETER NERONHA,                        :
        Defendants.                  :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      This is the fourth case filed in this Court in 2024 by *pro se* Plaintiff Clifford John Fantel, Jr.[1]  In this case, Plaintiff claims that the public Wi-Fi network ("RIJTC-GUEST") available at the Rhode Island State Law Library ("Law Library") located at the Frank Licht Judicial Complex, 250 Benefit Street, Providence, Rhode Island, denied him internet access when he used various VPN[2] applications on March 21 and 22, 2024.  ECF No. 1 at 7.  He alleges that he was blocked from "all Internet access which is not in clear text or unencrypted."  Id.  He also claims that, as a regular visitor to the Law Library, he has been able use his VPN application in the past and that he was still able to use his VPN on March 25, 2024, at the McGrath Judicial Complex in Wakefield, Rhode Island.  Id.  To the extent the Court is able to understand the claim, Plaintiff appears to contend that his inability to use his VPN applications for internet access at the Law Library causes him to rely instead on direct internet access that creates the risk

---

[1] See Fantel v. Town of South Kingstown, 24-cv-52; Fantel v. Town of South Kingstown, 24-cv-81; Fantel v. FBI, 24-cv-118.  These cases have been dismissed for failure to state a claim.  See Fantel, 24-cv-52, ECF No. 5; Fantel, 24-cv-81, ECF No. 8; Fantel, 24-cv-118, ECF No. 5.

[2] The Court assumes Plaintiff's use of the abbreviation "VPN" is meant to refer to a virtual private network.  A VPN is technology that can be used to conceal a user's identity and location.  United States v. Thompson, No. CR19-159RSL, 2022 WL 834026, at *2 n.2 (W.D. Wash. May 21, 2022).

of hacking by other users and exposes him to electronic eavesdropping, which has a chilling effect on his freedom of speech as a homeless person in contravention of his rights under the First and Fourth[3] Amendments of the United States Constitution.  Id. at 7-8.  As Defendants, Plaintiff names the State of Rhode Island and its Attorney General, Peter Neronha; he seeks an injunction and punitive damages of $100,000.  Id. at 1-2, 8.

Accompanying the complaint, Plaintiff has filed a motion for leave to proceed IFP, which has been referred to me.  ECF No. 2.  Because Plaintiff has satisfied the requirements of 28 U.S.C. § 1915(a)(1), the IFP motion would be granted.  However, in light of the IFP motion, the Court is directed to preliminarily screen the pleading pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.     Standard of Review and Applicable Law

To survive screening, analogous to surviving a motion to dismiss, a complaint must contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Avelin v. South Kingstown Police Department, C.A. No. 22-00295-WES, 2022 WL 3646613, at *1 (D.R.I. Aug. 24, 2022) (standard for dismissal of an action taken IFP is identical to the standard for dismissal under Fed. R. Civ. P. 12(b)(6)), adopted by text order (D.R.I. Sept. 14, 2022.  If a complaint fails to state a plausible claim, it must be dismissed.  28 U.S.C. § 1915(e)(2)(B)(ii).  In addition, a complaint filed in federal court must include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); if it does not, it is subject to dismissal.  See Martinez v. Investigator Raposo, C.A. No. 22-00144-WES, 2022 WL 1063823, at *2 (D.R.I. Apr. 7, 2022) ("Rule 8(a) requires parties to make their pleadings straight forward, so that judges and adverse parties need not try to fish a

---

[3] The Court is unable to discern that Plaintiff has been harmed by an unreasonable or warrantless search or seizure and has interpreted this invocation of the Fourth Amendment as intending the Fourteenth Amendment.

gold coin from a bucket of mud") (internal quotation marks omitted), <u>adopted by text order</u>
(D.R.I. April 28, 2022).

"The First Amendment prohibits government from abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." <u>Am. for Prosperity Found. v. Bonta</u>, 141 S. Ct. 2373, 2382 (2021) (internal quotation marks omitted). When speech in a public forum is restricted by the government, the level of scrutiny which the Court applies depends on whether the restriction was content neutral or content based; a content-based restriction is unlawful unless it "serves a compelling governmental interest by the least restrictive means," while restrictions that are content-neutral are lawful as long as "they are narrowly tailored to serve a significant governmental interest" while "leav[ing] open ample alternative channels for communication of the information." <u>Kurland v. City of Providence by and through Lombardi</u>, ___ F. Supp. 3d ___, No. 18-cv-440-MSM-LDA, 2024 WL 850680, at *7 (D.R.I. Jan. 11, 2024) (internal quotation marks omitted). For example, a decibel provision restricting noise levels is content-neutral; a municipality is permitted to enact such restrictions. <u>Dupres v. City of Newport, R.I.</u>, 978 F. Supp. 429, 433-35 (D.R.I. 1997) ("The First Amendment does not vest citizens with an absolute right to speak whenever and wherever they choose.") (internal quotation marks omitted). Further, because "[i]nternet access in public libraries is neither a 'traditional' nor a 'designated' public forum," the Supreme Court has questioned whether strict scrutiny is appropriate even for content-based access limits; "[a] public library does not acquire Internet terminals in order to create a public forum." <u>United States v. American Library Ass'n, Inc.</u>, 539 U.S. 194, 205-06, 208 (2003) (plurality opinion). In addition, given the public nature of computer access at a library, courts have held that users do not necessarily have an expectation of privacy as to

library-based computer activities.  See generally United States v. Lapradd, No. 3:10-CR-00076-R, 2010 WL 3853140, *3 (W.D. Ky. Sept. 28, 2010), aff'd, 480 F. App'x 405 (6th Cir. 2012); Wilson v. Moreau, 440 F. Supp. 2d 81, 104 (D.R.I. 2006), aff'd, 492 F.3d 50 (1st Cir. 2007).

## II.    Analysis

In considering the application of these legal principles to Plaintiff's complaint, I have taken all the non-conclusory allegations in it as true and have drawn all reasonable inferences in Plaintiff's favor.  Smith v. Roger Williams Univ. L. Sch., Case No. 21-cv-133-PJB-AKJ, 2022 WL 2387632, at *1 (D.R.I. Feb. 16, 2022).  In addition, I have liberally reviewed Plaintiff's allegations and legal claims, mindful that he is a pro se litigant.  See Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (per curiam).

Focusing first on Plaintiff's claim for injunctive relief from the State of Rhode Island, there is no question that the First Amendment's free speech clause could be implicated if the Law Library had deployed an overbroad content-based restriction on internet access untethered to any appropriate governmental interest.  See Mainstream Loudoun v. Bd. of Trustees of Loudoun Cnty. Libr., 2 F. Supp. 2d 783, 792-96 (E.D. Va. 1998).  Here, however, Plaintiff has challenged what is at most a content-neutral internet access limitation.  Further, the complaint supplies no facts regarding whether Plaintiff's difficulty with internet access via a VPN is due to a security-based limitation[4] on the public access Wi-Fi implemented by the Rhode Island Judiciary in a building where the State Judicial Branch is also conducting extremely sensitive state business (including the operations of the Rhode Island Supreme and Superior Courts) or

---

[4] For example, it is conceivable that permitting VPN use may facilitate hacking by the VPN user, which would injure other users of publicly accessible internet services.  See generally Thierry v. Jefferson Cnty., Texas, Civil Action No. 1:21-CV-00163, 2022 WL 3130885, at *3 (E.D. Tex. July 29, 2022) (employee downloaded VPN program and hacked other accounts), appeal dismissed sub nom. Thierry v. Jefferson Cnty., No. 22-40503, 2022 WL 18539942 (5th Cir. Nov. 14, 2022).

whether it may have been nothing more than the inadvertent collateral impact of a software upgrade by the Judiciary or whether it may have been caused by some other anomaly due to a change implemented by the provider supporting Plaintiff's access device or whether it is linked to some other unknown cause. To that extent, the Court is left to speculate whether Plaintiff has been impacted by a governmental action at all. Thus, Plaintiff has failed to "nudge[ his] claim[] across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and this pleading is subject to dismissal for failing to state a claim. Further, because Plaintiff's complaint is limited to just two instances when his VPN did not work at the Law Library and fails to explain whether he inquired of Law Library staff regarding what happened and why, the complaint also is not sufficient to plausibly allege that this was more than a *de minimis* restriction that would not transgress the First Amendment. Ivey v. Johnston, No. 18-cv-1429 (PAM/DTS), 2019 WL 3334346, at *5 (D. Minn. July 24, 2019) (constitution is not concerned with "*de minimis* restrictions"), adopted, 2019 WL 3987583 (D. Minn. Aug. 23, 2019); Price v. Wall, 464 F. Supp. 2d 90, 96 (D.R.I. 2006) (same). Importantly, Plaintiff does not claim that he has been denied internet access, but only that he had twice been unable to access it using his VPN. Plaintiff's preference to use an open-access internet service with a VPN for privacy is understandable but, in the context of a public library, such a preference does not necessarily give rise to a constitutional right. See generally Lapradd, 2010 WL 3853140, at *3; Wilson, 440 F. Supp. 2d at 104.

Based on the foregoing, I recommend dismissal of Plaintiff's claim for an injunction against the State of Rhode Island, with leave to file an amended pleading that overcomes these deficiencies to the extent that Plaintiff is able to marshal facts adequate to support a plausible claim.

Focusing separately on Plaintiff's claim for money damages, the Court is guided by the foundational principle that the Eleventh Amendment bars federal claims against states and state officials for money damages.  Letourneau v. Rhode Island Dept. of Corrections, C.A. No. 22-285JJM, 2023 WL 4156827, at *4 (D.R.I. June 23, 2023), adopted by text order (D.R.I. July 11, 2023); Munir v. Superior Ct., C.A. No. 22-39MSM, 2022 WL 669699, at *3 (D.R.I. Mar. 7, 2022), adopted sub nom. Munir v. Rhode Island Superior Ct. Corp., 2022 WL 844233 (D.R.I. Mar. 22, 2022) (suit for damages against State dismissed at screening because State is sovereign not susceptible to suit under 42 U.S.C. § 1983).  Based on this principle, to the extent that Plaintiff seeks money damages from the State of Rhode Island, all such claims should be summarily dismissed.  For the same reason, to the extent that Plaintiff's claims against Peter Neronha, the Rhode Island Attorney General, are intended to seek money damages from him in his official capacity, they should also be summarily dismissed.

Finally, 42 U.S.C. § 1983 permits claims against individuals for money damages only for their own conduct or omissions.  Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011) ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions.") (internal quotation marks omitted).  Under Rhode Island's tripartite scheme of government, the Attorney General of Rhode Island is not within the Judiciary and therefore cannot be responsible for what may be the actions of the Judiciary on which Plaintiff relies in this case.  See R.I. CONST. arts. V, IX § 12, X; In re Advisory Opinion to the Governor, 732 A.2d 55, 61 (R.I. 1999) (Rhode Island's "Attorney General . . . would clearly fall within the executive branch").  More fundamentally, Plaintiff's complaint contains nothing suggesting any action or inaction by the Attorney General that conceivably could support a claim against him in his individual capacity.  Guadalupe-Baez v.

Pesquera, 819 F.3d 509, 515 (1st Cir. 2016) (§ 1983 individual liability cannot rest solely on defendant's position, but rather must rest on causal connection between defendant's own conduct and alleged constitutional deprivation).  Therefore, all individual capacity claims against the Rhode Island Attorney General should also be summarily dismissed.

## III.    Conclusion

Based on the foregoing, I recommend that Plaintiff's complaint against the State of Rhode Island for injunctive relief only be dismissed with leave to amend in thirty days pursuant to 28 U.S.C. § 1915(e)(2)(B) because, as crafted, it fails to state a plausible claim.  To the extent that Plaintiff fails to file an amended pleading or his amended pleading still fails to state a plausible claim, I further recommend that Plaintiff's IFP application (ECF No. 2) be denied as moot.  I further recommend that all money damage claims against the State of Rhode Island and all claims against Peter Neronha, the Attorney General of Rhode Island, be summarily dismissed.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 17, 2024